UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA CRUZ, MARIA MADRIGAL, LOURDES BAIZ, and CHRISTIE GOODMAN, individually, residing in California,<br><br>Plaintiffs,<br><br>v.<br><br>MM 879, INC., a corporation; BARRETT BUSINESS SERVICES, INC., a corporation; THE SERVICEMASTER COMPANY, LLC, a limited liability company; MERRY MAIDS LP, a limited partnership; and MM MAIDS LLC, a limited liability company.<br><br>Defendants. | No. 1:15-cv-01563-TLN-EPG<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

This matter is before the Court on Defendants The ServiceMaster Company, LLC, Merry Maids, LP, and MM Maids, LLC (collectively "Defendants"),[1] Motion for Summary Judgment. (ECF No. 112.) Plaintiffs Angela Cruz, Maria Madrigal, Lourdes Baiz, and Christie Goodman (collectively "Plaintiffs") oppose Defendants' motion, and Defendants replied. (ECF Nos. 121, 142.) For the reasons set forth below, the Court DENIES Defendants' motion, (ECF No. 112).

---

[1] Two additional defendants, MM 879, Inc. and Barrett Business Services, Inc., do not join this motion. For the purposes of this motion, "Defendants" refers to the moving defendants, as defined above.

1

# I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs were formerly employed as home cleaners by Defendant MM 879 ("MM 879"), a Merry Maids franchisee with locations in Fresno and Lodi, California. (ECF No. 112 at 6, 8.) MM 879 employed Plaintiffs Cruz, Madrigal, and Baiz as home cleaners at its Fresno location at times between July 2006 and August 2010. (ECF No. 112 at 8.) MM 879 employed Plaintiff Goodman as a home cleaner at its Lodi location from April 2011 to March 2013. (ECF No. 112 at 8.) Plaintiffs allege they were jointly employed by Defendants The ServiceMaster Company, LLC ("ServiceMaster"), Merry Maids, LP ("Merry Maids"), MM Maids, LLC ("MM Maids"), and Barrett Business Services, Inc. ("BBSI"). (ECF No. 112 at 8–9.) ServiceMaster owns many franchised brands, including Merry Maids. (ECF No. 112 at 6.) Defendant Merry Maids is the franchisor for the Merry Maids system. (ECF No. 112 at 6.) Defendant MM Maids is the general partner in Merry Maids. (ECF No. 112 at 6.) Defendant BBSI is a professional employment organization that MM 879 hired to provide payroll management, benefits administration, human resource and other services during the relevant time period. (ECF No. 112 at 7.)

Plaintiffs allege several of Defendants' wage and hour policies violated California law. (ECF No. 112 at 8.) According to Plaintiffs, Defendants used a "percentage pay" scheme, which compensated employees based on houses cleaned and failed to provide hourly compensation for rest periods and nonproductive time. (ECF No. 112 at 8.) Plaintiffs allege they did not receive compliant meal and rest periods. (ECF No. 112 at 8.) Plaintiffs filed a class action suit, claiming failure to pay minimum wages for all hours worked, failure to pay overtime, failure to authorize and permit rest periods, failure to provide compliant meal periods, failure to issue accurate wage statements, failure to timely pay wages due at termination, and violations of the California Private Attorney's General Act (Labor Code § 2698 et. seq.). (Fifth Am. Compl., ECF No. 94 at 1.)

Defendants ServiceMaster, Merry Maids, and MM Maids filed the instant motion for summary judgment, arguing that they cannot be held liable as joint employers as matter of law. (ECF No. 112 at 6.) Defendants argue that this Court, therefore, should grant summary judgment dismissing all claims against them. (ECF No. 112 at 6.) Plaintiffs filed an opposition, (ECF No. 121), to which Defendants replied, (ECF No. 142).

## II. STANDARD OF LAW

Summary judgment is appropriate when the moving party demonstrates no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file together with affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotations omitted). Indeed, summary judgment should be entered against a party who does not make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* at 251–52.

In establishing a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*,

391 U.S. at 288–89. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S. at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with any applicable affidavits. Fed. R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. *Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir. 1987). Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

### III. ANALYSIS

Defendants argue that, as franchisors, Defendants are not employers of MM 879's employees and cannot be liable for any alleged violations.[2] (ECF No. 112 at 6.) In opposition, Plaintiffs argue that there are genuine issues of material fact regarding Defendants' status as an employer under both a joint employer theory and ostensible agency theory. (ECF No. 121 at 12.) The Court will first discuss the joint employer analysis under prevailing California law. Next, the Court will address Plaintiffs' alternative ostensible agency theory.

    A.    <u>Legal Standard for Joint Employer Analysis</u>

In California, a defendant is potentially liable for alleged wage and hour violations "only if they employ the plaintiffs and the putative class." *Ochoa v. McDonald's Corp.*, 133 F. Supp. 3d 1228, 1232 (N.D. Cal. Sept. 25, 2015). The Supreme Court of California, examining

---

[2] Defendants also argue MM 879 is not the alter ego of Defendants and so Defendants are not liable under that theory. (ECF No. 112 at 27–29.) Plaintiffs do not address this argument. (ECF No. 121.)

California Labor Code § 1194, determined "to employ" means (1) "to exercise control over the wages, hours or working conditions," (2) "to suffer or permit to work," or (3) "to engage, thereby creating a common law employment relationship." *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010). A defendant can be an employer for liability purposes if any one of the three prongs are satisfied.

The law has developed since *Martinez*. In *Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474 (2014), a plaintiff brought a claim against Domino's Pizza, the franchisor, for sexual harassment by a supervisor at a franchise location. *Id.* at 477. The court acknowledged that Domino's had the capacity to exert significant economic influence over franchisees. *Id.* at 485. The record revealed that Domino's "prescribed standards and procedures involving pizza-making and delivery, general store operations, and brand image" and "vigorously enforced [those standards] through representatives who inspected the franchise stores." *Id.* at 478. "However, there was considerable, essentially uncontradicted evidence that the franchisee made day-to-day decisions involving the hiring, supervision, and disciplining of his employees." *Id*.

The *Patterson* court emphasized that "franchising has seen massive growth," and "[a]nalysis of the franchise relationship for vicarious liability purposes must accommodate these contemporary realities." *Patterson*, 60 Cal. 4th at 478. The court continued, "[t]he imposition and enforcement of a uniform marketing and operational plan cannot *automatically* saddle the franchisor with responsibility. . .." *Id.* (emphasis original). The court determined that Domino's was entitled to summary judgment, holding that "[a] franchisor will be liable [as an employer] if it has retained or assumed the right of general control over the relevant day-to-day operations at its franchise locations . . .." *Id.* at 503.

The effect of *Patterson* on the *Martinez* framework is unclear. In the Northern and Central District, courts have applied *Patterson* to wage and hour claims by applying *Patterson*'s "gloss" to the third prong of *Martinez*. *See*, *e.g.*, *Ochoa*, 133 F. Supp. 3d at 1235, 1239; *Roman v. Jan-Pro Franchising International, Inc.*, No. 16-05961, 2017 WL 2265447, at *3 (N.D. Cal. May 24, 2017) ("In the absence of controlling authority . . . this order applies the *Martinez* standard, with the gloss of *Patterson* when considering the common-law definition of employment. . .."); *Salazar v. McDonald's Corp.*, No. 14-cv-02096, 2016 WL 4394165, at *4–5 (N.D. Cal. Aug. 16,

2016) (concluding that *Patterson* is instructive in wage and hour claims because it "elucidates the common law definition of employment in the franchisor context," which is the third prong of *Martinez*, and "focuses on the idiosyncrasies of the franchising relationship"); *Haitayan v. 7-Eleven, Inc.*, No. CV 17-7454-JW (JPRx), 2018 WL 1626248, at *2 (C.D. Cal. Mar. 14, 2018) (stating "it is appropriate to apply the three prong test from *Martinez* recognizing that the principles from *Patterson* are incorporated into the third prong"). In contrast to the Northern and Central Districts, the Southern District decided a wage and hour case using *Patterson* rather than the three prongs of *Martinez*. *Vann v. Massage Envy Franchising LLC*, 2015 WL 74139, at *6 (S.D. Cal. Jan. 6, 2015) ("California courts analyze the employment relationship between franchisors, franchisees, and employees under an agency theory.").

Here, the parties differ in their use of *Patterson* and *Martinez*. Defendants separate *Patterson* and *Martinez* into two distinct arguments. Defendants first argue that MM 879 was not Defendants' agent, applying *Patterson* rather than *Martinez* as the Southern District did in *Vann*. (ECF No. 112 at 17–23.) Next, Defendants argue they cannot be considered joint employers under *Martinez*'s prongs, ignoring *Patterson*. (ECF No. 112 at 23–27.) Plaintiffs argue *Martinez* is the proper legal standard to determine whether Defendants are joint employers, arguing *Patterson* does not apply to the instant case because its holding is limited to claims under the Fair Employment and Housing Act ("FEHA"). (ECF No. 121 at 11.) However, like the Northern and Central Districts, Plaintiffs apply *Patterson* to the third prong of *Martinez*. (ECF No. 121 at 19 ("To the extent that *Patterson* offers insight into this common law employment relationship in the franchisor-franchisee context, this is the *Martinez* prong to which it should be applied.")).

*Patterson* and *Martinez* have distinctions that merit further analysis. For example, the *Patterson* court addressed when a franchisor can be held vicariously liable for the torts of a franchisee's employee under FEHA, while *Martinez* specifically dealt with the definition of employment in actions brought under California Labor Code § 1194. *Martinez*, 49 Cal. 4th at 42; *Patterson*, 60 Cal. 4th at 499. Moreover, *Patterson* focused on the development of "traditional 'agency' terminology" and did not discuss the *Martinez* standard or joint employment. *Patterson*, 60 Cal. 4th at 478, 492. For the purpose of resolving this case, however, the parties agree that

6

*Martinez* is the proper standard for deciding the issue of joint employment. (ECF No. 112 at 23–27; ECF No. 121 at 11.) Thus, in the absence of binding authority, the Court will address Defendants' joint employer status under the *Martinez* analytical framework. Furthermore, the Court agrees with courts that find *Patterson* lends guidance as to the common law definition of employment in the franchisor context, which is relevant to the third prong of *Martinez*. *Salazar*, 2016 WL 4394165, at *4 ("While plaintiffs would stop with the decision in *Martinez* and ignore the analysis in *Patterson* as inapposite, a distorted view of operative law would be the result."). As such, this Court will consider the third prong of *Martinez* in light of *Patterson*.

B. <u>Joint Employer Theory</u>

Defendants argue they cannot be considered a joint employer under any of *Martinez*'s three prongs because Defendants did not (1) "exercise control over the wages, hours or working conditions," (2) "suffer or permit to work," or (3) "engage, thereby creating a common law employment relationship." (ECF No. 112 at 23.) Plaintiffs respond there is, "at the very least," a genuine issue as to whether Defendant can be liable under *Martinez*. (ECF No. 121 at 12.) In determining whether a genuine issue of material fact exists as to Defendants' joint employer liability under *Martinez*, the Court will review the undisputed evidence in the light most favorable to Plaintiffs. *Anderson*, 477 U.S. at 255. The Court will address the three *Martinez* prongs.

*i. Exercise Control over Wages, Hours, or Working Conditions*

Under *Martinez*'s first prong, Defendants may be joint employers if they "exercise control over the wages, hours, or working conditions." *Martinez*, 49 Cal. 4th at 64. "While this language is potentially quite broad in scope, California courts have circumscribed it by denying employer liability for entities that may be able to influence the treatment of employees but lack the authority to directly control their wages, hours or conditions." *Ochoa*, 133 F. Supp. 3d at 1233.

Plaintiffs argue Defendants exercised sufficient control by requiring strict adherence to the Franchise Agreement and retaining the right to terminate if MM 879 failed to adhere. (ECF No. 121 at 12–15.) The Franchise Agreement sets the bounds of the contractual relationship between MM 879 and Merry Maids. (ECF No. 124 at 206–32.) The Franchise Agreement states it "does not constitute Franchisee as an agent, legal representative, joint venture, partner, employee, or

7

servant of Franchisor for any purpose whatsoever. Franchisee shall be an independent contractor." (ECF No. 124 at 221 ¶ 16(A).) Paragraph 7(A) of the Franchise Agreement states, "[i]n order to protect the reputation and goodwill associated with the Marks and to maintain the uniform standards of operation thereunder, Franchisee shall conduct its Franchised Business in strict accordance with Franchisor's MM Manual." (ECF No. 124 at 212 ¶ 7(A).)

Plaintiff notes Merry Maids has the right to inspect and audit MM 879's documents at MM 879's expense. (ECF No. 121 at 8; ECF No. 124 at 213 ¶ 9(D).) Merry Maids also retains the right to modify the Merry Maids system and to terminate the Franchise Agreement if MM 879 "willfully violates any provision of this Agreement or any other agreement between Franchisee and Franchisor" or "otherwise failed to adhere to any material specification, standard or operating procedure prescribed by Franchisor." (ECF No. 121 at 7–8; ECF No. 124 at 218 ¶ E(5), (11).)

Plaintiff also highlights certain aspects of the Operation Manual, which is incorporated in the MM Manual.[3] (ECF No. 124 at 234–320.) For example, the Operation Manual instructs franchisees how to present a percentage-based compensation scheme to potential hires during interviews. (ECF No. 124 at 279.) The Operation Manual also states that franchisees must subject new hires to a criminal background check, drug screenings, and eligibility verification. (ECF No. 121 at 8; ECF No. 124 at 279–283.) The Operation Manual sets forth procedures for new employee orientation, training programs, and staff meetings on standard operating procedures, such as timekeeping, customer service, and accident reporting. (ECF No. 121 at 7–8; (ECF No. 124 at 284–287.) The Operation Manual also sets forth day-to-day procedures such as use of specified uniforms and cleaning kits. (ECF No. 121 at 9; ECF No. 124 at 255.) Finally, the Operation Manual includes a three-step disciplinary program. (ECF No. 121 at 9; ECF No. 124 at 292.) Plaintiffs argue Defendants exercise control over MM 879's employees because the Franchise Agreement requires strict adherence to these standards in the Operation Manual and reserves the right to terminate the franchise upon noncompliance. (ECF No. 121 at 12–15.)

---

[3] The MM Manual is defined as "all those Manuals, documents, booklets, guides and related materials containing the specifications, standards, procedures and rules applicable to the Franchise prescribed from time to time by Franchisor," including "Franchisor's so-called Operation Manual, Marketing Manual, Customer Information Systems Manual, Identity Manual, CBT programs, software programs, and other such programs, materials and training aids designated as confidential and from time to time revised by Franchisor." (ECF No. 112 at 10.)

The plaintiffs in *Ochoa* raised a similar argument. *Ochoa*, 133 F. Supp. 3d at 1235–38. In *Ochoa*, the court looked at "mountains of material" about the franchisor-franchisee relationship at a McDonald's franchise, including the franchisor's operational guidelines, training programs, and use of business consultants to monitor the franchisee's compliance. *Id*. at 1235. The *Ochoa* plaintiffs also argued that McDonald's controlled franchisees through the power to terminate franchise agreements. *Id.* at 1236. The court concluded the contractual strength of a franchisor to indirectly control franchisees does not create employer liability. *Id.* Instead, an employer must have the authority to *directly* control employees' wages, hours, or working conditions. *Id.* at 1233 (emphasis added); *Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1432–1433 (Cal. Ct. App. 2010) (concluding "'control over wages' means that a person or entity had the power or authority to negotiate and set an employee's rate of pay," and an entity is not an employer if it "does not control the hiring, firing, and day-to-day supervision of workers"). The *Ochoa* court determined McDonald's could not be liable as an employer because the franchisee made the final hiring, firing, wage, and staffing decisions without regard to the franchisor's involvement and indirect control. *Id.* at 1237–1238; s*ee also Salazar*, 2016 WL 4394165, at *6 (finding that the requirement of "strict adherence" to a franchise agreement, which incorporated the franchisor's business and operating manuals, was "too thin to establish liability as a joint employer"). Similarly, Plaintiffs do not provide any evidence as to Defendants' exercise of control beyond the Franchise Agreement and Operation Manual.[4] Plaintiffs have not shown Defendants exercised direct control over Plaintiffs' wages, hours, or working conditions.

Defendants, on the other hand, provide evidence to show Defendants did not exercise control over the hiring, firing, and day-to-day supervision of MM 879's employees. (ECF No. 112 at 11–13.) Jeffrey Skadburg testified that he began overseeing operation of MM 879's Fresno location in 2005 before he became co-owner and CFO of MM 879 in 2008. (ECF No. 112 at 11; ECF No. 115-1 at 13:9–11; 18:9–18.) He testified he never read the Operation Manual and

---

[4] Plaintiff cites *Nichols v. Arthur Murray, Inc.*, 248 Cal. App. 2d 610 (Ct. App. 1967), to argue that the rights retained in the Franchise Agreement are sufficient to meet the test in *Martinez*. (ECF No. 121 at 13–14.) *Nichols* is unpersuasive. The law has developed since *Nichols* was decided in 1967, including the *Patterson* decision, in which the California Supreme Court declined to extend *Nichols*. *Patterson*, 60 Cal. 4th at 498. Further, *Nichols* was not an employment case, and the court proceeded strictly on an agency theory. *Nichols*, 248 Cal. App. 2d at 611-12.

that the wage and hour practices at issue are set forth in MM 879's employee handbook, which was drafted by BBSI and revised by Skadburg without input from Defendants. (ECF No. 112 at 11, 13.) Skadburg testified that he was solely responsible for implementing MM 879's wage and hour practices, and MM 879 was the only entity to provide supervision, training, and management to MM 879 employees. (ECF No. 112 at 11–13.) In addition to Skadburg's deposition, Defendants also point to Plaintiffs' assertions that they had zero contact with any of Defendants, and that MM 879 was the sole entity to provide supervision, training, and management. (ECF No. 112 at 8; ECF No. 117-2 at 80–82.)

The Franchise Agreement and Operation Manual constitute the entirety of Plaintiffs' evidence as to Defendants' exercise of control, and that evidence is "too thin to establish liability." *Salazar*, 2016 WL 4394165 at *6. The fact that Defendants' only recourse for noncompliance was to terminate the agreement shows a lack of direct control. *Ochoa*, 133 F. Supp. 3d at 1236 ("[T]he fact that McDonald's would have to resort to economic and business relationship sanctions to motivate [the franchisee] to implement service changes underscores its lack of direct authority."); *Salazar*, 2016 WL 4394165 at 7 (noting the fact that a franchisor would have to terminate the franchise agreement to "get its way" shows a lack of direct authority). Moreover, there is no evidence that Defendants ever terminated or modified the Franchise Agreement, even in the face of alleged noncompliance by MM 879. Indeed, the evidence demonstrates that Defendants did not exercise control over Plaintiffs' wages, hours, or working conditions. *Roman*, 2017 WL 2265447 at *5 ("Ultimately, plaintiff unit franchisees fail to offer any evidence of [franchisor's] right to control their day-to-day activities or its exercise of such control, beyond its right to modify the policies that applied to the regional master franchisees and to terminate the regional master franchisees."). As such, Plaintiffs have not established an employment relationship under the first prong of *Martinez*.

    *ii.* *Suffer or Permit to Work*

Defendants may be Plaintiffs' employer if Defendants "suffer or permit" them to work. *Martinez*, 49 Cal. 4th at 64. This prong imposes liability based on a defendant's "knowledge of and *failure to prevent* the work from occurring." *Salazar*, 2016 WL 4394165 at *11.

1    Plaintiffs argue Defendants had both the ability to know of and prevent MM 879's wage
2    and hour violations because Defendants had the ability to access MM 879's operational
3    documents and modify or terminate the Franchise Agreement at any time.  (ECF No. 121 at 18.)
4    However, the second prong of *Martinez* requires that franchisors have actual knowledge of
5    violations and the power to prevent such violations.  *Salazar*, 2016 WL 4394165 at *11 (noting
6    that the ability to exert pressure through the "business relationship, standing alone" is not enough
7    to constitute suffering and permitting someone to work) (citing *Martinez*, 49 Cal. 4th at 69–70).

8    Plaintiffs also reference an email Merry Maids sent in 2009 to show Defendants had
9    knowledge of the compensation scheme at issue.  (ECF No. 121 at 19; ECF No. 117-2 at 107–08.)
10   In 2009, Merry Maids informed its California franchisees of changes being implemented at its
11   corporate locations to comply with California wage and hour laws.  (ECF No. 112 at 13–14; ECF
12   No. 117-2 at 107–08.)  The email stated, "Some of you in California have already made this
13   change."  (ECF No. 112 at 14; ECF No. 117-2 at 107–08.)  The email further stated, "Of course
14   your compensation rates and plans can be unique to your operation providing you are in
15   compliance with state and federal law, but I thought it would be a good idea to let you know what
16   we are doing at the branch level in California."  (ECF No. 112 at 14; ECF No. 117-2 at 107–08.)
17   Skadburg chose not to change to MM 879's compensation plan until 2012.  (ECF No. 112 at 14.)

18   Defendants argue the email is insufficient to show they had knowledge of MM 879's
19   compensation scheme.  (Defs.' Reply, ECF No. 142 at 5–6.)  The Court agrees.  The email
20   appears to be a generic letter sent to all franchisees in California, regardless of whether they had
21   already made the recommended changes.  Further, the email shows that Merry Maids understood
22   that its franchisees used various forms of compensation schemes, which bolsters the Court's prior
23   conclusion that Defendants did not exercise control over the wages, hours, or working conditions
24   of employees of franchise locations.  Even if the email suggested actual knowledge, Plaintiffs
25   provide no evidence Defendants had the power to prevent MM 879's employees from working.
26   The Franchise Agreement, without more, is insufficient.  *Salazar*, 2016 WL 4394165 at *11
27   (finding that a franchisor's capacity to "exert significant pressure through its franchising
28   relationship . . . simply is not enough" to satisfy the second prong of *Martinez* when the

1 franchisee possessed the exclusive power to manage employees and set their wages, hours, and
2 schedules). As discussed above, Skadburg testified that he was solely responsible for setting
3 wages, hours, and working conditions for MM 879 employees. Plaintiffs have failed to establish
4 an employment relationship under the second prong of *Martinez*.

         *iii.    Engage*

*Martinez* held that "to engage" means to create a common law employment relationship. *Martinez*, 49 Cal. 4th at 64. *Patterson* clarified the common law definition of employment in the franchisor context: "A franchisor . . . becomes potentially liable for actions of the franchisee's employees, only if it has retained or assumed a general right of control over factors such as hiring, direction, supervision, discipline, discharge, and *relevant* day-to-day aspects of the workplace behavior of the franchisee's employees." *Patterson*, 60 Cal. 4th at 497–98 (emphasis added).

    Plaintiffs focus on the term "right to control," stating it is the mere existence of this right, and not the exercise of the right that gives rise to liability. (ECF No. 121 at 19.) According to Plaintiffs, Defendants had a general right to control nearly all aspects of its franchise by requiring strict adherence to the Franchise Agreement and Operation Manual. (ECF No. 121 at 19.) Plaintiffs argue that, in addition to setting hiring criteria, cleaning procedures, and disciplinary processes, Defendants dictated the required compensation scheme in the Operation Manual, which left Defendants with a right to control Plaintiffs' wages. (ECF No. 121 at 20–23.)

    The Court disagrees with Plaintiffs' argument that the Franchising Agreement and Operation Manual impart the requisite "right to control." In *Patterson*, the court found that a franchise agreement and managers reference guide, which reserved the right to set various workplace standards, were insufficient to establish a right of control because the documents did not empower the franchisor to establish policies relevant to the harm. 60 Cal. 4th at 501; *see also Martinez*, 49 Cal. 4th at 76–77 (finding that distributors' contracts with a farmer did not give them the right to control the farmer's employees even though the distributors could establish extensive procedures for packing strawberries); *Salazar*, 2016 WL 4394165 at \*6 ("[E]ven if [the franchisor] retain[ed] the right to update its business manuals, the agreement . . . still lack[ed] any contractual right authorizing [the franchisor] to direct [the franchisee's] employees in their

work.") As in *Patterson*, neither the Franchise Agreement nor the Operation Manual reserve a right for Defendants to set wage and hour policies for MM 879's employees. Plaintiffs also fail to point to policies in the Franchise Agreement or Operation Manual relating to their other claims, namely the failure to provide meal breaks, rest periods, or accurate wage statements.

Moreover, although Plaintiffs allege Defendants dictated the compensation scheme at issue by instructing franchisees to describe the percentage pay system to new hires in the Operation Manual, it is undisputed that MM 879 declined to follow that compensation scheme. Again, Skadburg testified he had not read the Operation Manual and felt free to implement whatever compensation scheme he chose. (ECF No. 112 at 11.) Furthermore, MM 879's compensation scheme, which differed from that in the Operation Manual, was set forth in the MM 879 Handbook, which Skadburg testified was written and implemented by BBSI and Skadburg without any input from Merry Maids. (ECF No. 112 at 11–12.) Despite Merry Maids' email in 2009, Skadburg chose not to make the recommended changes until 2012, which resulted in no consequence from Defendants. (ECF No. 112 at 12–13; ECF 117-2 at 107–08.) Courts have found no right of control when franchisees, like MM 879, depart from a franchisor's compensation policy. *Roman*, 2017 WL 2265447 at *5 (finding that a franchisor did not control plaintiffs' wages despite creating a uniform methodology of pricing because franchisees exercised significant discretion in applying the pricing system and the franchisee had opted not to use the pricing system altogether); *Vann v. Massage Envy*, 2015 WL 74139 at *7 (concluding that lack of uniformity among franchisees' pay policies suggested that the franchisor did not control the employees' wages and hours, but left it up to the franchise owners).

The foregoing evidence shows that Skadburg alone controlled the wages, hours, and working conditions of MM 879 employees. *Patterson*, 60 Cal. 4th at 502 (finding the franchisor lacked a right of control because it was clear "that [the franchisee] implemented his own sexual harassment policy and training program for his employees"). Plaintiffs' evidence does not show Defendants had a right of control over MM 879's employees beyond the inherent control implied from the terms of the Franchise Agreement and Operation Manual. Under *Patterson*, "the standards and indirect pressure plaintiffs identify is not enough to support vicarious liability in the

franchising context." *Salazar*, 2016 WL 4394165 at *12 (citing *Patterson*, 60 Cal. 4th at 485). As such, Plaintiffs have failed to establish an employment relationship under the third prong of *Martinez*. There is, therefore, no triable issue under any of the three *Martinez* prongs. Accordingly, the Court grants Defendants motion for summary judgment as to the joint employer theory of liability.

### C. Ostensible Agent Theory

Plaintiffs advance an alternative theory that Defendants are liable because MM 879 became ostensible agents of Merry Maids.[5] (ECF No. 121 at 12, 15–17.) Ostensible agency exists where (1) "the person dealing with the agent does so with reasonable belief in the agent's authority;" (2) that belief is "generated by some act or neglect of the principal sought to be charged," and (3) "the relying party is not negligent." *Kaplan v. Coldwell Banker Residential Affiliates, Inc.*, 59 Cal. App. 4th 741, 747 (Ct. App. 1997).

Plaintiffs argue Merry Maids created a reasonable belief in the minds of MM 879 employees that the franchisee was operating as an agent of Merry Maids by the uniform system of branding, trademark, and promotion. (ECF No. 121 at 15) (citing *Ochoa*, 133 F. Supp. 3d at 1239). In *Ochoa*, the court denied summary judgment for McDonald's based on declarations of employees who believed McDonald's was their employer due to the franchisor's extensive system of branding. 133 F. Supp. 3d at 1239–40. Similarly, Plaintiffs offer declarations stating that each reasonably believed she "worked for the larger Merry Maids organization that happened to have a location in Fresno" because each received employee handbooks, paystubs, training materials, and uniforms that bore the words "Merry Maids." (ECF No. 121 at 16 (citing Cruz Decl., ECF No. 125 ¶ 10; Baiz Decl., ECF No. 126 ¶ 9; Madrigal Decl., ECF No. 128 ¶ 10).)

Defendants argue that Plaintiffs could not reasonably believe they worked for the larger Merry Maids organization because the MM 879 employee handbook states it is issued by "Merry Maids of Fresno" and lists "Jeff and Jason Skadburg" as owners. (ECF No. 142 at 11 (citing Hague Decl., ECF No. 124 at 399-400).) Defendant also points to Plaintiffs' declarations in

---

[5] "Unlike the standards for true agency, which focus on the exercise of control, the ostensible agency inquiry looks at whether [a franchisor], through an act or omission, caused plaintiffs reasonably to believe [the franchisee] was its agent." *Salazar*, 2016 WL 4394165 at *12 n.13.

14

support of their motion for class certification, in which Plaintiffs stated, "their work experience led them to conclude that they were employed by MM 879 and BBSI." (ECF No. 142 at 11 (citing Baiz Decl., ECF No. 101; Cruz Decl., ECF No. 102; Madrigal Decl., ECF No. 103; Goodman Decl., ECF No. 104).)

Courts facing similar fact patterns have found plaintiffs' declarations about a franchisor's pervasive branding sufficient to create a genuine issue as to whether plaintiffs reasonably believed the franchisee to be an agent of the franchisor. *Ochoa*, 133 F. Supp. 3d at 1239–1240 (finding the test for ostensible agency met where the plaintiffs wore the franchisor's uniform, serviced the franchisor's food in its packaging, and received paystubs and orientation materials with the franchisor's name and logo); *see also Salazar*, 2016 WL 4394165 at *12–13 (denying summary judgment on plaintiffs' ostensible agency theory because there was considerable evidence, subject to dispute, that the franchisor's branding caused plaintiffs to reasonably believe both they and the franchisee worked for the franchisor). Viewing the evidence in the light most favorable to Plaintiffs, the Court finds there is a genuine dispute over the reasonableness of Plaintiffs' beliefs MM 879 was acting as an agent for Merry Maids. Accordingly, the Court denies Defendants' motion for summary judgment as to Plaintiffs' ostensible agency theory.

D.   Evidentiary Objections

Defendants object to portions of Plaintiffs' declarations, offered in support of their ostensible agent theory, that they believed they "worked for the larger Merry Maids organization that happened to have a location in Fresno" and referencing examples of Merry Maids branding on documents and uniforms. (Defs.' Objections, ECF No. 145.)

Defendants' first argue that Plaintiffs' failed to provide the Merry Maids-branded documents referenced in the declarations, in violation of the best evidence rule. (ECF No. 145 at 2.) In ruling on a motion for summary judgment, "courts focus on the admissibility of the evidence's content rather than its form." *Vann*, 2015 WL 74139 at *5 (citing *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003)). Further, "[w]here material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence, a party is permitted to object." *Id.* (citing Fed. R. Civ. P. 56(c)(2)). The *Vann* court continued, "[a]ffidavits or

declarations used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* (citing Fed. R. Civ. P. 56(c)(4)). Plaintiffs' declarations meet these requirements of Rule 56(c)(4).

For their second argument, Defendants cite *Villarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) to contend that the Ninth Circuit has "refused to find a 'genuine issue' where the only evidence presented is 'uncorroborated and self-serving' testimony." (ECF No. 145 at 2–3.) However, as seen in *Villarimo* and the cases cited therein, Defendants' contention applies when the sole source of evidence is a singular plaintiff's uncorroborated testimony. *Villarimo*, 281 F.3d at 1059 n.5 ("[Plaintiff] cites only her own self-serving and uncorroborated affidavit and deposition testimony in support of this assertion and provides no indication how she knows this to be true."). Here, Plaintiffs offer multiple, independent declarations that corroborate one another. Therefore, *Villarimo* is not persuasive to the instant case. Defendants' objections to Plaintiffs' declarations are overruled.

All Plaintiffs' evidentiary objections, (Pls.' Objections, ECF No. 129), were to portions of documents not necessary to the Court's resolution of this motion and are denied as moot.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendants' Motion for Summary Judgment on the issue of Defendants' liability under a theory of ostensible agency, (ECF No. 112).

IT IS SO ORDERED.

Dated: January 16, 2019

Troy L. Nunley
United States District Judge

16