UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELA CRUZ; MARIA MADRIGAL; LOURDES BAIZ; and CHRISTIE GOODMAN, individually, residing in California, | No.  1:15-cv-01563-TLN-EPG |
| Plaintiffs, | **ORDER GRANTING DEFENDANT BBSI'S MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| MM 879, INC.; BARRETT BUSINESS SERVICES, INC.; THE SERVICEMASTER COMPANY, LLC; MERRY MAIDS LP; and MM MAIDS LLC. | |
| Defendants. | |

This matter is before the Court on Defendant Barrett Business Services, Inc.'s ("BBSI")

Motion for Summary Judgment.  (ECF No. 175.)  Plaintiffs Angela Cruz, Maria Madrigal,

Lourdes Baiz, and Christie Goodman (collectively, "Plaintiffs") filed an opposition.  (ECF No.

179.)  BBSI filed a reply.  (ECF No. 180.)  For the reasons set forth below, the Court GRANTS

BBSI's motion.

///

///

///

1

## I.   FACTUAL AND PROCEDURAL BACKGROUND

All parties are aware of the factual background as set forth in the Court's previous orders (ECF Nos. 162, 161), and that factual background is adopted herein.  In summary, the instant action arises from Plaintiffs' certified class action lawsuit alleging violations of various California wage and hour laws.  (*See generally* ECF No. 94.)  Defendants removed the action to this Court on October 14, 2015.  (ECF No. 1.)

On August 26, 2016, Plaintiffs filed a motion for class certification.  (ECF No. 99.)  On September 8, 2016, Defendants The ServiceMaster Company, LLC ("ServiceMaster"), Merry Maids, LP ("Merry Maids"), MM Maids, LLC ("MM Maids") (collectively, "the Merry Maids Defendants") filed a motion for summary judgment, arguing they could not be held liable for the employment-related practices of a franchisee (Defendant MM 879, Inc.) based on the undisputed facts, and were therefore entitled to judgment dismissing all claims against them as a matter of law.  (ECF. No 112 at 6.)

On January 18, 2019, the Court entered an order granting Plaintiffs' motion for class certification and appointing the named Plaintiffs as class representatives.  (ECF No. 161 at 14.)  On the same day, the Court also entered an order granting the Merry Maids Defendants' motion for summary judgment as to Plaintiffs' joint employment theory of liability and denying the motion as to Plaintiffs' ostensible agency theory of liability.  (ECF No. 162 at 16.)

The Merry Maids Defendants filed a motion for reconsideration on February 1, 2019.  (ECF No. 163.)  In support of their motion, the Merry Maids Defendants cited the Ninth Circuit's intervening decision in *Salazar v. McDonald's Corp.*, 944 F.3d 1024, 1033 (9th Cir. 2019) ("*Salazar III*"), wherein the court held that a franchisor could not be held liable for wage and hour violations under an ostensible agency theory pursuant to Wage Order 5-2001.  On January 31, 2020, the Court — now bound by *Salazar III* — granted the motion for reconsideration and dismissed Defendants ServiceMaster, Merry Maids, and MM Maids from the action.  (ECF No. 182.)  Plaintiffs filed a motion for reconsideration on February 28, 2020, which this Court denied on November 24, 2020.  (ECF Nos. 183, 191.)

///

2

1  BBSI filed the instant motion for summary judgment on October 9, 2019, arguing it could

2  not be held liable for Defendant MM 879, Inc.'s ("MM 879") employment-related practices.

3  (ECF No. 175.)  BBSI is a professional employer organization that provides MM 879 with

4  payroll processing, offsite human resource consulting services, and workers' compensation

5  insurance coverage.  (ECF No. 179-1 at 2.)  Plaintiffs filed an opposition (ECF No. 179), and

6  BBSI filed a reply (ECF No. 180).

7  **II.      STANDARD OF LAW**

8  Summary judgment is appropriate when the moving party demonstrates no genuine issue

9  as to any material fact exists and the moving party is entitled to judgment as a matter of law.  Fed.

10  R. Civ. P. 56(a); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Under summary

11  judgment practice, the moving party always bears the initial responsibility of informing the

12  district court of the basis of its motion, and identifying those portions of "the pleadings,

13  depositions, answers to interrogatories, and admissions on file together with affidavits, if any,"

14  which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex Corp. v.*

15  *Catrett*, 477 U.S. 317, 323 (1986).  "[W]here the nonmoving party will bear the burden of proof

16  at trial on a dispositive issue, a summary judgment motion may properly be made in reliance

17  solely on the pleadings, depositions, answers to interrogatories, and admissions on file."  *Id.* at

18  324 (internal quotations omitted).  Indeed, summary judgment should be entered against a party

19  who does not make a showing sufficient to establish the existence of an element essential to that

20  party's case, and on which that party will bear the burden of proof at trial.

21  If the moving party meets its initial responsibility, the burden then shifts to the opposing

22  party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

23  *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–87 (1986); *First Nat'l Bank of Ariz. v. Cities*

24  *Serv. Co.*, 391 U.S. 253, 288–89 (1968).  In attempting to establish the existence of this factual

25  dispute, the opposing party may not rely upon the denials of its pleadings, but is required to

26  tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in

27  support of its contention that the dispute exists.  Fed. R. Civ. P. 56(c).  The opposing party must

28  demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

3

1   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and that

2   the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for

3   the nonmoving party. *Id.* at 251–52.

4        In establishing a factual dispute, the opposing party need not establish a material issue of

5   fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require

6   a jury or judge to resolve the parties' differing versions of the truth at trial." *First Nat'l Bank*,

7   391 U.S. at 288–89.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to

8   assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita*, 475 U.S.

9   at 587 (quoting Rule 56(e) advisory committee's note on 1963 amendments).

10        In resolving the summary judgment motion, the court examines the pleadings, depositions,

11   answers to interrogatories, and admissions on file, together with any applicable affidavits.  Fed.

12   R. Civ. P. 56(c); *SEC v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982).  The evidence

13   of the opposing party is to be believed, and all reasonable inferences that may be drawn from the

14   facts pleaded before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S.

15   at 255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

16   obligation to produce a factual predicate from which the inference may be drawn. *Richards v.*

17   *Nielsen Freight Lines*, 602 F. Supp. 1224, 1244–45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898 (9th Cir.

18   1987).  Finally, to demonstrate a genuine issue that necessitates a jury trial, the opposing party

19   "must do more than simply show that there is some metaphysical doubt as to the material facts."

20   *Matsushita*, 475 U.S. at 586.  "Where the record taken as a whole could not lead a rational trier of

21   fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587.

22   ///

23   ///

24   ///

25   ///

26   ///

27   ///

28   ///

4

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### III.   ANALYSIS

BBSI argues it is not Plaintiffs' employer and thus cannot be liable for any alleged wage and hour violations.  (ECF No. 175-1 at 2.)  In opposition, Plaintiffs argue there are triable issues regarding BBSI's status as an employer under both a joint employer theory and an ostensible agency theory.  (ECF No. 179 at 5.)  The Court will address Plaintiffs' arguments in turn.

#### A.   Joint Employer Theory

"[I]n cases involving the issue of whether an employer-employee relationship existed for purposes of the Labor Code wage statutes, [courts] will apply the *Martinez* definition."  *Futrell v. Payday California, Inc.*, 190 Cal. App. 4th 1419, 1431 (2010).  Under *Martinez*, "to employ" means (1) "to exercise control over the wages, hours or working conditions," (2) "to suffer or permit to work," or (3) "to engage, thereby creating a common law employment relationship."  *Martinez v. Combs*, 49 Cal. 4th 35, 64 (2010).  A defendant can be an employer for liability purposes if any one of the three prongs are satisfied.  *Id.*

##### i.   *Control over Wages, Hours, or Working Conditions*

Under the first prong of *Martinez*, BBSI may be a joint employer if it exercises control over Plaintiffs' "wages, hours, or working conditions."  49 Cal. 4th at 64.  Defendants argue that Plaintiffs fail to cite even one instance where BBSI exercised any supervisory control over their work in any manner.  (ECF No. 180 at 4.)  In opposition, Plaintiffs argue BBSI's involvement in developing and drafting the Employee Handbook "strongly suggests" direct involvement in setting Plaintiffs' rates of pay and working conditions.  (ECF No. 179 at 17.)

Defendant has the better argument.  Jeffrey Skadburg ("Skadburg"), the owner of MM 879, testified that BBSI processes MM 879 payroll checks, provides workers' compensation insurance, and gives human resources advice, but not advice on how to compensate employees. (ECF No. 175-6 at 3.)  Skadburg further testified that he and his brother make their "own decisions about how to run the day-to-day operation" of MM 879.  (*Id.* at 10.)  Plaintiffs argue that BBSI exercised control by drafting the Employee Handbook, which detailed the piece-rate compensation scheme at issue and other terms and conditions of employment.  (ECF No. 179 at 17.)  But Plaintiffs admit that MM 879 subsequently edited sections of the Employee Handbook.

1  (*Id.*)  Regardless, BBSI's involvement drafting the Employee Handbook is not evidence that

2  BBSI ultimately oversaw the day-to-day application and enforcement of the policies and

3  procedures set forth in the Handbook.  *See Futrell*, 190 Cal. App. 4th at 1433 ("[A] payroll

4  company, or any other person or entity that processes payroll, is not an employer because he, she,

5  or it, does not control the hiring, firing, and day-to-day supervision of workers supplying the

6  labor.").  Plaintiffs fail to provide any evidence from which the Court may draw even a

7  reasonable inference that anyone other than Skadburg and his brother exercised control over the

8  day-to-day operations of MM 879 employees.  Plaintiffs thus fail to raise a triable fact under the

9  first prong of *Martinez*.

10                    *ii.      To Suffer or Permit to Work*

11           Under the second prong of *Martinez*, BBSI may be liable if it knew "that persons are

12  working . . . while being paid less than the minimum wage . . . and failed to prevent it, while

13  having the power to do so."  49 Cal. 4th at 69.  "The question under California law is whether

14  [BBSI] is one of Plaintiffs' employers, not whether [BBSI] caused Plaintiffs' employer to violate

15  wage-and-hour laws by giving the employer bad tools or bad advice."  *Salazar*, 944 F.3d at 1030.

16           Plaintiffs argue BBSI had actual knowledge of the wage violations because BBSI

17  processed payroll and issued pay stubs for MM 879.  (ECF No. 179 at 19.)  Plaintiffs then argue

18  BBSI had the capacity to prevent wage violations because BBSI can terminate contracts with

19  clients like MM 879 and has terminated client contracts in the past for failure to comply with

20  wage and hour laws.  (*Id.*)

21           Plaintiffs provide no case law to support their argument.  Further, such an argument is

22  similar to one this Court rejected as to the Merry Maids Defendants.  (ECF No. 62 at 11.)  In

23  finding there was no evidence the Merry Maids Defendants had the power to prevent MM 879's

24  employees from working, the Court noted that a franchisor's power to exert pressure on

25  franchisees through franchise agreements was insufficient to satisfy the second prong of

26  *Martinez*.  (*Id.*); *see also Martinez*, 49 Cal. 4th at 70 (although a substantial purchaser might force

27  employment decisions on a supplier by withdrawing its business, "[s]uch a business relationship,

28  standing alone, does not transform the purchaser into the employer of the supplier's workforce").

1    The same logic applies here.  There is no evidence that BBSI could prevent Plaintiffs from

2    working merely by terminating (or threatening to terminate) its contract with MM 879.  To the

3    extent Plaintiffs are arguing BBSI could somehow prevent wage violations in its capacity as

4    payroll processor, the court in *Futrell* declined to extend liability in similar circumstances.  190

5    Cal. App. 4th at 1434 (finding there was no evidence a payroll processing company had the

6    power to cause the plaintiff to work or prevent him from working); *see also Salazar*, 944 F.3d at

7    1030 ("Plaintiffs' focus on responsibility for the alleged *violations* of wage-and-hour laws is

8    misplaced, because the 'suffer or permit' definition pertains to responsibility for *the fact of*

9    *employment itself*.") (emphasis in original).  As it is, Skadburg testified that BBSI's services were

10   limited to running payroll checks, providing workers' compensation insurance, and giving human

11   resources advice.  (ECF No. 175-6 at 3.)  BBSI's Person Most Qualified, Thomas Stuart, as well

12   as BBSI's Person Most Knowledgeable, Gerald Blotz, both testified that BBSI did not control

13   Plaintiffs' employment.  (ECF No. 175-5 at 7–9, 13, 17; ECF No. 175-7 at 4.)  As discussed,

14   Plaintiffs fail to provide evidence to the contrary.  Accordingly, Plaintiffs fail to raise a triable

15   fact under the second prong of *Martinez*.

16                   *iii.    Common Law Employment Relationship*

17           "The essence of the common law test of employment is in the 'control of details.'"

18   *Futrell*, 190 Cal. App. 4th at 1434.  "A number of factors may be considered in evaluating this

19   control, including: (1) whether the worker is engaged in a distinct occupation or business; (2)

20   whether, considering the kind of occupation and locality, the work is usually done under the

21   alleged employer's direction or without supervision; (3) the skill required; (4) whether the alleged

22   employer or worker supplies the instrumentalities, tools, and place of work; (5) the length of time

23   the services are to be performed; (6) the method of payment, whether by time or by job; (7)

24   whether the work is part of the alleged employer's regular business; and (8) whether the parties

25   believe they are creating an employer-employee relationship."  *Id.*  Importantly, "[t]he parties'

26   use of a label to describe their relationship does not control and will be ignored where the

27   evidence of their actual conduct establishes a different relationship exists."  *Id.*

28   ///

BBSI argues this case is similar to *Futrell*.  (ECF No. 175-1 at 8.)  In *Futrell*, the defendant "provide[d] payroll processing and related services for companies that produce television commercials."  *Id.* at 1424.  The defendant regularly used form contracts for its production company clients.  *Id.*  Those form contracts included provisions identifying the defendant as "employer of temporary employees."  *Id.*  The plaintiff worked as a private policeman for one such production company, and he brought a putative class action against the production company and the defendant as "joint employers" alleging various California Labor Code violations.  *Id.* at 1425.  The *Futrell* court found that, despite documents that listed the defendant as an employer, the defendant was not a joint employer because the defendant did not direct or supervise the plaintiff at the production sites, did not provide any tools or the place of work, did not set the plaintiff's pay, did not benefit from the plaintiff's services, and the plaintiff's services were not an integral part of the defendant's regular business operations.  *Id.* at 1435.  The *Futrell* court also emphasized that defendant "did not and could not hire or fire [the employee], nor did the defendant have any control over [his] work activities."  *Id.*

Plaintiffs argue that unlike the payroll processing company in *Futrell*, BBSI "had the power and authority to hire, discipline, and fire Plaintiffs" and "retained numerous other rights to control, manage, and oversee Plaintiffs' work activities."  (ECF No. 179 at 14.)  Plaintiffs acknowledge that "the language and labels contained in contracts and agreements between parties are not dispositive of the employment relationship," but they argue such agreements still have "probative significance."  (*Id.* at 15.)  Plaintiffs argue that BBSI provided other services as well, such as drafting the Employee Handbook.  (*Id.*)  Plaintiffs also argue that BBSI drafted an Employee Safety Handbook and provided in-person assistance to MM 879 in at least one Labor Commissioner hearing.  (*Id.*)  According to Plaintiffs, these facts create a triable issue as to whether BBSI can be considered a joint employer under the third prong of *Martinez*.

The thrust of Plaintiffs' argument appears to be that BBSI is a joint employer because it retained rights to control certain aspects of Plaintiffs' employment, even though there is no evidence BBSI actually exercised such control.  Plaintiffs cite *Ayala v. Antelope Valley Newspapers, Inc.*, 59 Cal. 4th 522, 533 (2014), wherein the court stated "[t]he existence of such

1    right of control, and not the extent of its exercise, gives rise to the employer-employee

2    relationship."  However, Plaintiffs fail to persuade the Court that *Ayala* is relevant to the instant

3    case.  Plaintiffs ignore that *Ayala* involved a dispute over whether newspaper carriers were

4    independent contractors or employees. 59 Cal. 4th at 528.  The *Ayala* court did not discuss joint

5    employment or the *Martinez* test.  Plaintiffs also ignore that *Ayala* dealt with a motion for class

6    certification, and the court did not reach the merits of the claims.  *Id.* ("[T]he sole question is

7    whether this case can proceed as a class action.").  More specifically, the issue before the *Ayala*

8    court was whether the employer's right to control laid out in its contracts could be shown on a

9    class-wide basis.  *Id.* at 534 ("At the certification stage, the importance of a form contract is not in

10   what it says, but that the degree of control it spells out is uniform across the class.").  The court

11   concluded that the trial court improperly denied class certification "both because of individual

12   variations in whether [the hirer] exercised control and because control was not pervasive, rather

13   than asking whether [the hirer's] underlying right of control was subject to variations that would

14   defy class-wide proof and prove unmanageable." *Id.*  at 538.  Even if *Ayala* was relevant in the

15   instant case, the *Ayala* court also noted, "While any written contract is a necessary starting point, .

16   . . the rights spelled out in a contract may not be conclusive if other evidence demonstrates a

17   practical allocation of rights at odds with the written terms."  *Id.* at 535.

18           Although Plaintiffs may have believed BBSI was their employer based on the

19   employment agreements and Employee Handbook, *Futrell* makes clear that "[t]he parties' use of

20   a label to describe their relationship does not control and will be ignored where the evidence of

21   their actual conduct establishes a different relationship exists."  190 Cal. App. 4th at 1435.  Here,

22   despite the language of the documents cited by Plaintiffs, there is no evidence that BBSI in fact

23   had "control of details" as laid out in *Futrell*.  *Id.* at 1434 (listing factors).  Notably, Skadburg

24   himself testified that he did not consider his employees to be employees of BBSI, despite the

25   language in the Employee Handbook.  (ECF No. 179-4 at 77.)  The house cleaning services

26   performed by Plaintiffs were not for BBSI's benefit, nor are such jobs an integral part of BBSI's

27   regular business operations.  *Futrell*, 190 Cal. App. 4th at 1435.  There is no evidence that BBSI

28   directed or supervised Plaintiffs at worksites.  *See id.*  Similarly, there is no evidence BBSI

1    supplied the instrumentalities, tools, or the place of work.  *See id.*  Plaintiffs argue that BBSI

2    assisted Skadburg at a Labor Commissioner hearing regarding an employee's failure to receive a

3    final paycheck, but Skadburg testified only that a BBSI representative attended the hearing and

4    talked to him about it.  (ECF No. 179-4 at 68–69, 72.)  Plaintiffs fail to explain how BBSI's

5    presence and seemingly minor involvement at an unrelated hearing transforms BBSI into

6    Plaintiffs' employer.  Put simply, Plaintiffs' evidence fails to create a triable issue as to whether

7    BBSI qualifies as their employer under the common law definition.  *See also Nasiri v. T.A.G. Sec.*

8    *Protective Servs., Inc.*, No. 18-cv-01170-NC, 2020 WL 5257865, at *3 (N.D. Cal. Sept. 3, 2020)

9    (granting summary judgment for a "back-office solutions company" that provided payroll

10   processing, financing, and workers' compensation insurance — and was listed as the plaintiff's

11   employer — because there was "simply no evidence that [the company] controlled any aspect of

12   [that plaintiff's] employment").  As such, Plaintiffs have failed to establish an employment

13   relationship under the third prong of *Martinez*.

14          In sum, there is no triable issue under any of the three *Martinez* prongs.  Accordingly, the

15   Court GRANTS BBSI's motion for summary judgment as to the joint employer theory of

16   liability.

17                  B.      Ostensible Agency Theory

18          Next, BBSI argues it cannot be liable under the ostensible agency theory based on the

19   Ninth Circuit's recent decision in *Salazar III*.  In *Salazar III*, the Ninth Circuit expressly found a

20   franchisor could not be held liable for wage and hour violations under an ostensible agency theory

21   pursuant to Wage Order 5-2001.  944 F.3d at 1033.  Plaintiffs admit the Court is bound by

22   *Salazar III*, but they argue that *Salazar III* does not apply because the case involved a franchisor-

23   franchisee relationship.  (ECF No. 179 at 22.)  However, the statutory interpretation analysis in

24   *Salazar III* is not so limited.  The Ninth Circuit specifically looked to the definition of "employer"

25   from Wage Order 5-2001 § 2(H) and from that definition, concluded that, "[b]y its plain terms,

26   the reference to an 'agent' applies only to an entity that actually employs the worker or that

27   actually exercises control over the wages, hours, or working conditions of the worker."  *Id.*  The

28   court, citing Cal. Civ. Proc. Code § 1859, further noted that while "agency principles ordinarily

                                                      10

1    encompass both actual and ostensible agency . . . the Wage Order is more specific and, therefore,

2    controls." *Id.*  As a result, the court held that the ostensible agency theory is inconsistent with the

3    plain terms of the Wage Order and is therefore precluded as a matter of law.  *Id.*  Having found

4    McDonald's was not an employer under *Martinez*, the Ninth Circuit concluded it could not be

5    liable under ostensible agency theory.  *Id.*

6          Contrary to Plaintiffs' argument, nothing in the Ninth Circuit's ostensible agency analysis

7    was unique to the franchisor-franchisee relationship.  As such, the Court concludes that the same

8    reasoning from *Salazar III* applies here.  Similar to *Salazar III*, the Court has found that BBSI

9    was not Plaintiffs' employer under *Martinez*.  Consequently, this Court must find the ostensible

10   agency theory does not apply as a matter of law.  Therefore, the Court GRANTS BBSI's motion

11   for summary judgment as to the ostensible agency theory of liability.

12   **IV.   CONCLUSION**

13         For all these reasons, the Court GRANTS BBSI's Motion for Summary Judgment.  (ECF

14   No. 175.)  Defendant BBSI is hereby DISMISSED from the action.

15         IT IS SO ORDERED.

16    DATED:  November 29, 2020

17

18

19

20                                          Troy L. Nunley
                                            United States District Judge
21

22

23

24

25

26

27

28